IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

PAUL E. PRICE,                                        )
                                                     )
                    Plaintiff,                       )
                                                     )
vs.                                                  )          Case No. 19-CV-4222-C-WBG
                                                     )
ANDREW M. SAUL,                                      )
Commissioner of Social Security,                     )
                                                     )
                    Defendant.                       )

ORDER AND OPINION AFFIRMING COMMISSIONER'S
FINAL DECISION DENYING BENEFITS

Pending is Plaintiff Paul E. Price's appeal of Defendant Commissioner of Social Security's

final decision denying Plaintiff's application for disability insurance benefits. For the following

reasons, the Commissioner's decision is AFFIRMED.

## I.      BACKGROUND

Plaintiff was born in 1976, has an eleventh-grade education, and previously worked as a

cashier, psychiatric aide, salesperson, and repair shop manager. R. at 21, 56, 159, 189. In July

2017, Plaintiff applied for disability insurance benefits, alleging he became disabled on June 14,

2014. R. at 159-60. His application was denied, and he requested a hearing before an

administrative law judge ("ALJ"). R. at 88-94.

In January 2019, ALJ Vicky Ruth conducted a hearing. R. at 35-66. On March 11, 2019,

the ALJ issued her decision, finding Plaintiff is not disabled. R. at 10-23. The ALJ concluded

Plaintiff has the following severe impairments: vestibular system disorder; post-concussive

syndrome; trauma disorder; obesity; neurocognitive disorder; and depression. R. at 12. The ALJ

determined Plaintiff has the following residual functional capacity ("RFC"):

> I find that the claimant has the residual functional capacity to perform light work
> as defined in 20 CFR 404.1567(b) in that she [sic] can lift up to 20 pounds

occasionally and lift/carry up to 25 pounds frequently. The claimant can stand/walk for about six hours and sit for up to eight hours in an eight-hour workday with normal breaks. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps or stairs. The claimant can occasionally balance and stoop, and he can frequently kneel, crouch, and crawl. The claimant should avoid concentrated exposure to extreme heat, extreme cold, and excessive vibration. The claimant can work in an environment with a moderate noise level, that means, for example, a department store or grocery store, somewhere with light traffic noise or an office where typewriters are used. The claimant should avoid all exposure to workplace hazards, such as dangerous, moving machinery and unprotected heights. The claimant should avoid concentrated exposure to fumes, odors, dusts, and gases. The claimant is able to perform simple, routine tasks.

R. at 14.

As set forth in her decision, the ALJ asked a vocational expert ("VE") during the January 2019 hearing if a hypothetical individual with Plaintiff's age, education, work experience, and the above-identified RFC could perform Plaintiff's past jobs or other work in the national economy. R. at 21-22, 56-57. The VE testified such an individual could work as a cashier, one of Plaintiff's past jobs, and could also work as a shipping and receiving weigher, mail clerk, and office helper. R. at 56-58. In addition, the ALJ asked if an employee requiring two extra fifteen-minute breaks three times every week would be able to work. R. at 59. The VE testified there were no jobs in the national economy for such a person. R. at 59-60. When asked if an employee would remain employed if he missed more than one day of work per month, the VE testified such an individual would lose his job. R. at 60-61.

Based upon her review of the record, her RFC determination, and the VE's testimony, the ALJ determined Plaintiff could return to his job as a cashier and could also work as an order clerk, document preparer, and final assembler. R. at 21-22. Plaintiff appealed the ALJ's decision to the Social Security Administration's Appeals Council, which denied his appeal. R. at 1-3, 153-55. Plaintiff now appeals to this Court. Doc. 3.

## II.    STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Turpin v. Colvin,* 750 F.3d 989, 992-93 (8th Cir. 2014). This Court must affirm the Commissioner's decision "if substantial evidence in the record as a whole supports [the] decision." *Hilliard v. Saul*, 964 F.3d 759, 761-62 (8th Cir. 2020) (citation omitted). The threshold for such evidentiary sufficiency is not high. *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted). "As long as substantial evidence in the record supports the Commissioner's decision, [a reviewing court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted).

A reviewing court does not reweigh the evidence and defers to the Commissioner's credibility determinations if they are supported by good reasons and substantial evidence. *Id.* In evaluating for substantial evidence, a court must consider evidence that supports the Commissioner's decision as well as evidence that detracts from it. *Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions, the court must affirm. *See id.*

## III.   DISCUSSION

Plaintiff argues this matter should be remanded because (A) the ALJ failed to find somatoform disorder as a severe impairment, (B) the ALJ improperly evaluated Plaintiff's subjective complaints, and (C) the ALJ's RFC is not supported by the record.  Doc. 11, at 3-16.

### A.   Somatoform Disorder

When determining whether an individual is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a)(4).  Relevant to this appeal, at the second step, the ALJ considers the "medical severity" of the claimant's "impairments."  *Id*. § 404.1520(a)(4)(ii).  The ALJ will find an individual is not disabled if he does "not have a severe medically determinable physical or mental impairment . . . . or a combination of impairments that is severe . . . ."  *Id*.  An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by objective medical evidence from an acceptable medical source."  *Id.* § 404.1521.  An ALJ cannot use a claimant's statement of symptoms to establish the existence of an impairment.  *Id.*  At step two, the ALJ expressly noted Plaintiff "alleged a somatoform disorder" but determined the "medical record lacks objective evidence to support a diagnosis of somatoform disorder."  R. at 14.

### (1) Medical Evidence

Plaintiff argues this matter must be remanded because two medical records support a diagnosis of somatoform disorder.  Doc. 11, at 3-6.  Plaintiff first identifies a neuropsychological evaluation performed in May 2015 by Michael Oliveri, Ph.D.  *Id*. at 5; R. at 631-39.  Dr. Oliveri observed the following:

> [Plaintiff] was administered a self-report inventory designed to further evaluate psychological symptom validity and the nature of current psychological adjustment (MMPI-2-RF).  He generated **a profile of problematic validity due to features associated with symptom over-reporting**.  In particular, he endorsed a larger than

average number of infrequent responses. In some cases, this level of symptom endorsement may represent symptom over[-]reporting, particularly in the absence of individuals with genuine psychological difficulties reporting credible symptoms. He also endorsed **an unusual combination of symptoms associated with noncredible somatic and cognitive (memory) symptoms.** Taken together, **conservative interpretation of the profile is most in keeping with somatoform coping** wherein psychological factors may be contributing to the development, maintenance, and/or exacerbation of nonspecific somatic symptoms (malaise, head pain complaints, neurological symptoms, GI symptoms).

R. at 634 (emphasis added). Dr. Oliveri found Plaintiff's assessment results included "multiple indications of atypical performance and atypical symptom-reporting to patients with documented/ validated residual acquired brain injury." R. at 635. According to Dr. Oliveri, Plaintiff "performed in an atypical fashion on measures that patients with acquired brain dysfunction perform well on. Additionally, **there are features of symptom over-reporting, particularly in the areas of vague somatic and cognitive symptomatology**." *Id.* (emphasis added).

Dr. Oliveri stated Plaintiff's evaluation results were supported by "[a]typical neurocognitive profile, not in keeping with residual acquired brain-behavior dysfunction," and "**Somatoform Disorder, NOS is strongly suggested**." R. at 635. (emphasis added). He explained "somatoform coping is not referable to a known illness or injury. Rather, such a presentation represents the perception somatic/cognitive symptoms not explained by the nature of the known illness or injury (medically unexplained symptoms)." *Id.* Thus, contrary to Plaintiff's argument, Dr. Oliveri did not diagnose Plaintiff with somatoform disorder. Moreover, Dr. Oliveri noted Plaintiff's case "represent[ed] a very unusual and improbable outcome (not supported by the data)," his "overall presentation is noncredible," and he had no restrictions "[f]rom a neuropsychological perspective." *Id.*

Plaintiff also relies on a December 2015 new patient appointment with Matthew Bayes, M.D. to support his argument that the ALJ should have found Plaintiff suffered from somatoform disorder. Doc. 11, at 5-6; R. at 423-26. In the record from this appointment, Dr. Bayes recounted

5

Plaintiff's "history of present illness." R. at 423-24. Therein, Dr. Bayes mentioned Plaintiff underwent an evaluation with Dr. Oliveri in May 2015. R. at 424. Dr. Bayes noted Dr. Oliveri "felt that [Plaintiff] probably had somatoform disorder NOS." *Id.* Dr. Bayes did not diagnose Plaintiff with somatoform disorder. In fact, in Dr. Bayes's "Assessment/Plan," there was no mention of somatoform disorder. R. at 425. Again, contrary to Plaintiff's argument, Dr. Bayes did not diagnose Plaintiff with somatoform disorder.

Since 2015, Plaintiff has been seen by several other medical providers. On only one other instance was somatoform disorder referenced. In September 2018, during an independent medical examination, Jennifer Brockman, M.D., noted Plaintiff "stated his current inability to work, from his perspective, is linked to his subjective experience with dizziness, and not mental health symptomatology. **He denied a history suggestive for prior somatic coping** and/or unexplained medical illnesses in the past." R. 564 (emphasis added). Notably, Plaintiff does not discuss this medical record in his brief.

Regardless, the record does not include objective medical evidence from an acceptable source or a medically acceptable clinical or laboratory diagnostic technique showing Plaintiff suffers from somatoform disorder. *See* 20 C.F.R. § 404.1521. Without objective medical evidence or a clinical or laboratory diagnostic technique establishing Plaintiff has somatoform disorder, the ALJ, pursuant to the federal regulations, could not find Plaintiff suffered from somatoform disorder. *Id.*; *see also Burns v. Sullivan*, 888 F.2d 1218, 1219 (8th Cir. 1989) (finding the evidence before the ALJ did not support a finding of somatoform disorder because the psychological evaluations did not diagnose the plaintiff with somatoform disorder or any impairment falling within the definition of somatoform disorder); *Heuchelin v. Colvin*, No. C15-1033, 2016 WL 5030374, at *4-5 (N.D. Iowa Sept. 19, 2016) (concluding "the ALJ adequately addressed the limited evidence provided in the record regarding [the plaintiff's] alleged somatoform disorder"

6

because no one diagnosed the plaintiff with somatoform disorder, one doctor's "work-up included consideration of somatoform disorder" but did not result in a diagnosis of somatoform disorder, and the plaintiff did not show his alleged somatoform disorder was a severe impairment).

(2) Plaintiff's Reported Symptoms

Plaintiff also argues he "consistently reported the same symptoms" – i.e., vertigo with dizziness and headaches – since the onset of alleged disability, and his symptoms are "consistent with somatoform disorder." Doc. 11, at 6. Plaintiff contends his reporting of symptoms and the medical evidence he identified, which is discussed *supra*, constitute substantial evidence supporting a finding that he suffers from somatoform disorder. *Id*. at 6-9. But this argument, like Plaintiff's argument about the two medical records, ignores the federal regulations. Specifically, the Social Security Administration "will not use [an applicant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. § 404.1521. While Plaintiff may have reported symptoms of somatoform disorder, his statements about those symptoms could not be considered by the ALJ. *Id.*; *see also* 20 C.F.R. § 404.1529 ("There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment . . . .").

Based on the foregoing, the Court finds the ALJ did not err in finding Plaintiff did not suffer from the severe impairment of somatoform disorder. The Court also concludes the ALJ's finding that Plaintiff's severe impairments did not include somatoform disorder is supported by substantial evidence in the record.

## B.      Plaintiff's Subjective Complaints

Plaintiff also argues this matter should be remanded because the ALJ did not properly evaluate his subjective complaints.[1]  When an ALJ evaluates a Social Security claimant's

---

[1] In 2016, the Social Security Administration issued a Policy Interpretation Ruling, which eliminated use

subjective complaints, the ALJ "must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and 20 C.F.R. § 404.1529(c)). The ALJ is not required to discuss each of these factors. *Id.* (citation omitted). Further, the "ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citation omitted).

On appeal, this Court does not reweigh the evidence before the ALJ. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citation omitted). Additionally, the Court must "defer to the ALJ's determinations regarding" a claimant's subjective complaints, "so long as they are supported by good reasons and substantial evidence." *Id.* (citation omitted). This is because determinations about a claimant's subjective complaints "are in the province of the ALJ," and this Court "will not substitute its opinion for the ALJ's, who is in a better position to gauge [subjective complaints] and resolve conflicts in evidence." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (citations omitted).

(1) Plaintiff's Testimony and His Spouse's Statements

Plaintiff argues the ALJ improperly found inconsistencies between his hearing testimony and his wife's statements regarding Plaintiff's daily activities. Doc. 11, at 10-11. The ALJ

_____

of the term "credibility" and clarified the "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p (Mar. 28, 2016). In his brief, Plaintiff utilizes the term "credibility," likely due to the Eighth Circuit's observation that the policy ruling "largely changes terminology rather than the substantive analysis to be applied." *Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020); Doc. 11, at 9 n.5. Although the standard remains the same, the Court refers to Plaintiff's subjective complaints, instead of Plaintiff's credibility.

determined the spouse's statements were inconsistent with Plaintiff's hearing testimony in that Plaintiff's self-reported daily activities were more limited. R. at 15-16. According to his spouse, Plaintiff "can prepare simple meals with canned goods or frozen meals," does "[s]ome laundry and light cleaning," can walk "50 to 100 feet," and "can follow written instructions very well." R. at 243-50. Plaintiff testified that reading makes his symptoms worse,[2] he tries to straighten up the house but it is "very difficult," and walking down the hallway in the house causes him "big problems." R. at 44-45, 47. With respect to Plaintiff's ability to walk and do household tasks (and arguably his ability to read and/or follow instructions), Plaintiff's testimony and his spouse's statements are inconsistent. Thus, the ALJ did not err in finding Plaintiff's hearing testimony and his wife's statements in 2017 were inconsistent.

(2) Specific Evidence Considered by the ALJ

Plaintiff also contends "[t]he ALJ's finding that Plaintiff's allegations are 'not entirely consistent' with the record is 'meaningless boilerplate'" and does not inform this Court as to the "specific evidence the ALJ considered in determining [Plaintiff's] complaints were not credible." Doc. 11, at 11-12 (citation omitted). In addition to Plaintiff's testimony and his spouse's statements, the ALJ considered the "longitudinal medical record," noting Plaintiff "has consulted with numerous specialists and undergone extensive work up to determine the cause of his subjective symptoms." R. at 16. The ALJ observed Plaintiff's "medical providers have repeatedly indicated that his subjective complaints are not consistent with the objective medical findings, which suggests that his symptoms are not as limiting as he alleged." *Id.*

The ALJ provided a detailed analysis of the medical evidence and Plaintiff's subjective complaints. R. at 16-20. The ALJ described several medical providers' opinions about the medical

---

[2] It is unclear how Plaintiff could "follow written instructions very well," as stated by his spouse, when Plaintiff claims reading causes his symptoms, including dizziness, to worsen.

9

evidence and Plaintiff's subjective complaints. *Id.* These medical providers opined Plaintiff's subjective complaints are not as limiting as he alleges, the objective findings do not support his reported symptoms, his subjective symptoms are inconsistent with the history of his injury, he is over-reporting his symptoms, he does not have a significant impairment, and he could return to work with few or no restrictions. R. at 16-20; *see also* R. at 293-94, 391-94, 401, 408-12, 419-20, 423-25, 453-54, 461, 471, 480, 505-06, 510, 544, 568, 600-01, 603, 612, 621, 634-35, 642-44.

When examining the medical opinions, the ALJ specified which opinions she found persuasive, the degree to which she found them persuasive, and any functional limitations set forth by medical professionals whose opinions the ALJ found persuasive. R. at 16-20. The ALJ found the opinion of Dr. Abigail McEwan, who found Plaintiff should refrain from bending, working on raised surfaces, or operating heavy machinery, was persuasive. R. at 17, 621.[3] In addition, the ALJ determined Dr. Bayes's opinion was persuasive. R. at 18. Although Dr. Bayes noted Plaintiff showed "signs of exaggerated behavior" and "was clear to work any job," Dr. Bayes found, based on Plaintiff's subjective complaints, Plaintiff should avoid heights and ladders. R. at 18, 419.[4]

The ALJ also found the opinions rendered by state agency evaluators in January 2018 were persuasive. R. at 19. They opined Plaintiff had moderate limitations with certain mental functions; should never climb ladders, ropes, or scaffolds; and should avoid certain environmental factors. R. at 19, 71-86.[5] Finally, although she found the opinion of a consultative examiner, Dr. Raymond

---

[3] In line with Dr. McEwan's opinion, the ALJ's RFC indicated Plaintiff "should avoid . . . moving machinery and unprotected heights." R. at 14.

[4] Dr. Bayes's suggested limitations were included in the ALJ's RFC. That is, Plaintiff "can never climb ladders, and as noted above, should avoid unprotected heights. R. at 14.

[5] The ALJ's RFC limited Plaintiff to "simple, routine tasks," and determined he should "never climb ladders, ropes, or scaffolds"; "avoid concentrated exposure to extreme heat, extreme cold, and excessive vibration"; and should avoid "concentrated exposure to fumes, odors, dusts, and gases." R. at 14.

Cohen, was not "persuasive overall," the ALJ's RFC included Dr. Cohen's opinion that Plaintiff should avoid hazards based on his allegations of dizziness.  R. at 20, 576-80.

Based on the foregoing, the Court finds the ALJ's analysis of Plaintiff's subjective complaints is not boilerplate or meaningless.  The ALJ's decision informs the Court of the specific evidence she considered when examining Plaintiff's subjective complaints.  The Court finds the ALJ properly evaluated Plaintiff's subjective complaints, and the ALJ's determinations regarding Plaintiff's subjective complaints are supported by good reasons and substantial evidence.

## C.     The ALJ's RFC

Plaintiff argues the ALJ's RFC is not supported by substantial evidence.  One's RFC is the "most you can still do despite your limitations."  20 C.F.R. § 404.1545(a)(1).  The ALJ must base the RFC on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations."  *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).  Because the RFC is a medical question, "an ALJ's assessment of it must be supported by some medical evidence of [Plaintiff's] ability to function in the workplace."  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Plaintiff raises three arguments specific to the ALJ's RFC.

First, Plaintiff contends his ability to do household chores does not support a finding that he can perform sustained work-related physical activities in a work setting.  Doc. 11, at 12-13.  This argument suggests the ALJ's RFC is based solely on Plaintiff's spouse's statements; however, the ALJ's decision details the evidence she considered in reaching the RFC.  R. at 14-20.  As discussed *supra*, section III(B)(2), much of the medical evidence supports the ALJ's determination that Plaintiff could perform light work with additional restrictions.

Second, Plaintiff contends the ALJ failed to recognize he was treated and evaluated by medical providers associated with his workers' compensation claim, and therefore, according to

Plaintiff, the providers were paid to ensure he returned to work. Doc. 11, at 13. Plaintiff seems to argue it was error for the ALJ to consider opinions from these medical providers. Yet, Plaintiff does not cite any authority to support such an argument.

Additionally, Plaintiff's argument ignores Plaintiff's burden of proof and burden of persuasion. "A disability claimant has the burden to establish her RFC." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citations). "If the claimant establishes her inability to do past relevant work, then the burden of proof shifts to the Commissioner." *Id*. (citation omitted). Then, the Commissioner must prove "first that the claimant retains the RFC to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Id.* (citations omitted). However, "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." *Id.* (citation omitted). In addition, as conceded by counsel during oral argument, Plaintiff was evaluated by medical providers not associated with his workers' compensation claim, and Plaintiff does not cite to any authority suggesting the ALJ should not have considered the opinions rendered by those providers who treated him for his workers' compensation claim.

Finally, Plaintiff argues the ALJ's RFC "does not adequately capture Plaintiff's moderate limitations in concentration, persistence and pace." Doc. 11, at 13. The ALJ's RFC limits Plaintiff to "simple, routine tasks." R. at 14. To accurately capture Plaintiff's moderate limitations in concentration, persistence, or pace, Plaintiff contends the ALJ's RFC should have included one additional break three times per week. Doc. 11, at 14. In support, Plaintiff cites two medical opinions wherein the providers opined Plaintiff had moderate limitations with concentration, persistence, or pace. *Id*. at 14-15. The ALJ found one of these opinions was persuasive but the other opinion was not persuasive overall. R. at 19. According to the opinion the ALJ found to be

persuasive, the medical professional determined Plaintiff "can carry out simple work instruction," is able to "understand and remember simple instruction," and can "sustain an ordinary routine." R. at 19, 84. Accordingly, limiting Plaintiff to "simple, routine tasks" is supported by the record and accurately depicts his limitations. Nothing in the record – much less, medical evidence – supports Plaintiff's suggested limitation for additional breaks. The Court concludes the ALJ's RFC is supported by substantial evidence in the record.

## IV. CONCLUSION

For all the foregoing reasons, the Court finds the Commissioner's decision is supported by substantial evidence on the record as a whole, and therefore, is affirmed.

**IT IS SO ORDERED.**

DATE: March 30, 2021                    ___*/s/ W. Brian Gaddy*_____
                                        W. BRIAN GADDY
                                        UNITED STATES MAGISTRATE JUDGE